EDOK - Application for Search Warrant (Revised 5/13)

**FILED**

# United States District Court

## EASTERN DISTRICT OF OKLAHOMA

OCT 31 2017

PATRICK KEANEY
Clerk, U.S. District Court

By _____
Deputy Clerk

**In the Matter of the Search of**
1) Samsung Cellular Telephone, Model: Galaxy Note5, IMEI: 353756072020985;
2)  Samsung Galaxy Cellular Telephone, Model: SM-J327P, IMEI: 356964086129167; and
3)  ZTE Cellular Telephone, Model: Z836BL, IMEI: 862447031390610
CURRENTLY IN THE POSSESSION OF THE DRUG ENFORCEMENT ADMINISTRATION AT 100 AIRPORT ROAD, MCALESTER, OKLAHOMA

Case No.  **MJ - 17 - 077 - KEW**

## APPLICATION FOR SEARCH WARRANT

I, Ryan D. Young, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the Eastern District of Oklahoma *(identify the person or describe property to be searched and give its location)*:

### SEE ATTACHMENT "A"

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

### SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of Title 18, United States Code, Section 922(g)(1) and Title 21, United States Code, Sections 841(a)(1), and the application is based on these facts:

☒ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Ryan D. Young
SA, DEA

Sworn to before me and signed in my presence.

Date:  **Oct 31, 2017**

_____
*Judge's signature*

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

City and state:      Muskogee, Oklahoma

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

**IN THE MATTER OF THE SEARCH OF**

1) Samsung Cellular Telephone, Model: Galaxy Note5, IMEI: 353756072020985

2) Samsung Galaxy Cellular Telephone, Model: SM-J327P, IMEI: 356964086129167;

3) ZTE Cellular Telephone, Model: Z836BL, IMEI: 862447031390610

CURRENTLY IN THE POSSESSION OF THE DRUG ENFORCEMENT ADMINISTRATION AT 100 AIRPORT ROAD, MCALESTER, OKLAHOMA

Case No:

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Ryan D. Young, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property (electronic devices), described in Attachment A, which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.     I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since September 2015. During my employment with the DEA I have specialized in investigations involving narcotics trafficking and money laundering.  I have received specialized

training on the subject of narcotics trafficking and money laundering from the DEA and have been personally involved in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions.

3.      Prior to my employment with the DEA as a Special Agent, I was employed by Immigration and Customs Enforcement (ICE) for approximately seven and one-half (7 ½) years as an Immigration Enforcement Agent. I was assigned to the Criminal Alien Program and Fugitive Operations Program. I have participated in and supported numerous narcotic investigations involving the illegal manufacturing, possession, sale, distribution and importation of many different types of controlled substances.

4.      I am familiar with the facts and circumstances of this investigation as a result of my personal participation in the investigation referred to in this affidavit and information summarized in reports I have reviewed. I have compiled information derived from discussions with experienced law enforcement officers, including Special Agents of the DEA and other State and Local law enforcement agencies. Based on my training, experience and on my participation in this investigation, I know the following:

a.      Cocaine is a Schedule II controlled substance, and that the manufacture, distribution or possession with intent to distribute and conspiracy to commit said acts are violations of Title 21, United States Code, Sections 841(a)(1) and 846. Further, it is a violation of Title 18, United States Code, Section 1956 to knowingly conduct or attempt to conduct a financial transaction involving proceeds from a specified unlawful activity, to include drug conspiracy.

b.      Drug couriers and traffickers commonly use multiple methods of communication to arrange transactions and conduct business. Cellular telephones and

2

other devices which access the Internet are frequently used to send and receive messages over long distances;

      c.      Drug traffickers commonly use cellular phones or other electronic devices to communicate with users and sellers of illegal controlled substances, negotiate prices for illegal controlled substances, solicit sales of illegal controlled substances, facilitate transactions where illegal controlled substances are sold, and photograph or video record money and drugs obtained through illegal means.

      d.      Drug traffickers, including couriers transporting drugs, use Global Positioning System (GPS) devices to assist them in navigation from locations where they start a trip to transport drugs to the intended destination where they deliver the drugs, which is often a location thousands of miles from where their trip started;

      e.      Drug traffickers frequently maintain records, receipts, notes, ledgers, and other documents relating to the transportation, ordering, sale and distribution of controlled substances; drug traffickers commonly consign controlled substances to their clients and transporters; that the aforementioned records, receipts, notes, ledgers, and other documents are frequently stored on, maintained by or accessed using cellular telephones or other electronic devices where the traffickers have ready access to them;

      f.      Electronic files can be easily moved from one cellular phone or electronic storage medium to another. Therefore, electronic files downloaded to, or created on one cellular phone can be copied to, or transferred to, most any other cellular phone or storage medium.

      g.      Drug traffickers amass proceeds from the sale of drugs and that the drug traffickers attempt to legitimize these profits; to accomplish these goals, drug traffickers

3

utilize domestic banks and their attendant services, securities, cashier checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations, business fronts, and other forms of online virtual currency.

5.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

<u>IDENTIFICATION OF THE DEVICES TO BE EXAMINED</u>

6.     The property to be searched is:

a)     Samsung   Cellular   Telephone,   Model:   Galaxy   Note5,   IMEI: 353756072020985;

b)     Samsung   Galaxy   Cellular   Telephone,   Model:   SM-J327P,   IMEI: 356964086129167;

c)     ZTE Cellular Telephone, Model: Z836BL, IMEI: 862447031390610

Hereinafter the "Devices" (Attachment A).  The Devices are currently in the custody of the Drug Enforcement Administration McAlester Resident Office located at 100 Airport Road in McAlester, Oklahoma, within the Eastern District of Oklahoma.

7.     The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

<u>PROBABLE CAUSE</u>

8.     On October 16, 2017, at approximately 9:20 A.M., Oklahoma Highway Patrol Trooper Daran Koch stopped a gray in color 2017 Dodge Durango traveling eastbound on Interstate 40 near Mile Marker 297, within in the Eastern District of Oklahoma, for traveling over the speed limit.  The driver provided Trooper Koch a Pennsylvania driver's license identifying him as **Manuel Emilio PAYANO.  PAYANO** sat in Trooper Koch's vehicle while

4

Trooper Koch issued a warning citation.  **PAYANO** told Trooper Koch he had rented the vehicle. **PAYANO** also told Trooper Koch he and the passenger had spent one day in Las Vegas, Nevada.

9.     Trooper Koch then returned to the vehicle to obtain the vehicle rental agreement. While obtaining the vehicle rental agreement he spoke to the passenger identified as **VEGA**. **VEGA** told Trooper Koch, **PAYANO** picked him up him up in California.  Trooper Koch noticed the rental agreement showed the Dodge rented by **PAYANO** in Las Vegas on October 12, 2017, and was due to be returned on October 16, 2017, in Overland Park, Kansas.  **PAYANO** told Trooper Koch he (**PAYANO**) was going to call the rental company about the return date and location.

10.     At the request of Trooper Koch and while Trooper Koch spoke with **PAYANO** and issued the warning citation, Trooper Cody Hyde arrived and deployed his Police Service Dog (PSD) to perform an exterior scan of the Dodge.  Trooper Hyde received a positive alert from his PSD as to the presence of the odor of an illegal controlled substance coming from the vehicle.  **PAYANO** told Trooper Koch there may be traces of marijuana in the rental vehicle.

11.     Troopers Koch, Hyde and Clint Craft then searched the Dodge.  Trooper Koch opened the rear hatch of the Dodge and searched a blue duffle bag.  Under towels in the blue bag, Trooper Koch observed numerous foil-wrapped bundles that Koch recognized to be consistent with kilograms of narcotics.  Koch removed the blue bag from the Dodge and put it on the hood of his unit.  Koch and Hyde cut into one bundle and saw a white powder that looked consistent with the appearance of cocaine.  A search of the remainder of the Dodge revealed several different types and styles of bags and one cardboard box from the rear cargo area and

backseat area of the Dodge all of which contained kilogram-sized bundles.   A Western Union receipt in the name of **VEGA** was found in one of the travel bags containing kilograms of suspected cocaine.  The Dodge was searched thoroughly and all items of evidence were secured by Trooper Koch.

12.   Both subjects were placed under arrest, read their Miranda Warning and transported to the Oklahoma Highway Patrol office in Sallisaw, Oklahoma.  Once there, the troopers counted 67 packages containing 69 kilo-sized bundles.  The substance contained in three of the bundles was field tested and tested positive for the presence of cocaine.

13.   At approximately 11:04 A.M., Affiant spoke to **PAYANO**.  **PAYANO** requested to have an attorney present before answering any questions.

14.   At the time of the contact, **PAYANO**'s cell phone was located in the center cup holder of the Durango. **PAYANO** gave consent for SA Epps and the Affiant to search his cell phone which he identified as, Samsung Cellular Telephone, Model: Galaxy Note5, IMEI: 353756072020985. During a search of the phone, SA Epps saw numerous text messages to his source of supply. **VEGA** identified source of supply as the individual who coordinated the trip to California for the purpose of trafficking cocaine. SA Epps also identified a hotel receipt on **PAYANO**'s cell phone from his stay in Oklahoma City, OK on October 15, 2017 and ended the search at that time.

14.   At approximately 11:22 A.M., Affiant spoke with **VEGA** who signed a written waiver of rights and admitted to knowing he was involved in transporting an illegal substance from California to Philadelphia, PA, but did not necessarily know what substance was being transported.   **VEGA** admitted to knowledge of the kilogram sized packages in one of the bags, but had no knowledge of the kilogram packages contained in the box or other bags located in the Dodge. **VEGA** stated that he received instructions from Manuel **PAYANO**'s source of supply

6

over his cellular telephone to pick up the load of cocaine. Source of supply paid **VEGA** $950.00 via Western Union for his travel to Los Angeles. **VEGA** also sent a picture of his Pennsylvania Driver's License to source of supply via his cell phone for the purpose of source of supply booking a flight for him from Philadelphia to Los Angeles. **VEGA** stated that Manuel **PAYANO** contacted him over his cell phone and arranged for an unknown female to meet at the Ramada Inn for the purpose of dropping off a duffle bag. **VEGA** communicated with the unknown female via cell phone and she dropped off a duffle bag of cocaine with him (**VEGA**) at the Ramada Inn in Riverside, CA.

15.     At the time of the contact, **VEGA**'s cell phone was located in his pocket. **VEGA** identified his cell phone as the Samsung Galaxy Cellular Telephone, Model: SM-J327P, IMEI: 356964086129167 and gave SA Epps and the Affiant consent to search his phone. A quick search of the phone revealed text messages to the source of supply (SOS) under the name of "Mickie." The phone number for Mickie is the same phone number that **VEGA** provided as source of supply's phone number. **VEGA**'s phone was also being used as a navigation device and was navigating to Nashville, TN during SA Epps and the Affiants interview.

16.     Neither **PAYANO** nor **VEGA** claimed the third device, ZTE Cellular Telephone, Model: Z836BL, IMEI: 862447031390610, which was located in the center cup holder of the Durango at the time of the contact. Based on the Affiants training and experience, drug traffickers often use a separate device was used to communicate with their source of supply (SOS) and criminal associates while trafficking illegal substances from location to location.

17.     On October 16, 2017, Trooper Koch transferred custody of the approximately 67 packages of suspected cocaine to SA Brian Epps and Affiant. Each of the vacuum-sealed

7

packages was of approximately the same size and packaged in a similar manner. Affiant weighed several of the packages and each package had an approximate weight of at least 1 kilogram.

TECHNICAL TERMS

18.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.     Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may include global positioning system ("GPS") technology for determining the location of the device, and often include GPS applications so the device can be used in navigation. Additionally, wireless telephones often include digital cameras that are capable of taking photographs and videos, which are stored on the device.

8

b.      Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.      GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d.      IP Address:  An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and

9

directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

     e.     Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

     19.     Based on my training, experience, and research, I know that the cellular telephones described in Attachment A have capabilities that allow them to serve as a wireless telephone, digital camera, GPS navigation device, and to browse the Internet. In my training and experience, examining data stored on these types of devices can uncover evidence described in Attachment B, and among other things, evidence that reveals or suggests who possessed or used the device.

ELECTRONIC STORAGE AND FORENSIC ANALYSIS

     20.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the devices. This information can sometimes be recovered with forensics tools.

     21.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how

10

the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

        a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

        b.      Forensic evidence on a device can also indicate who has used or controlled the devices. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

        c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

        d.      The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

        e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

11

22. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

23. *Manner of execution.* Because this warrant seeks only permission to examine the Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

24. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Ryan D. Young
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on the 31st day of October 2017.

UNITED STATES MAGISTRATE JUDGE

12

## **ATTACHMENT A**

1.    The property to be searched as:

    a)    Samsung Cellular Telephone, Model: Galaxy Note5, IMEI: 353756072020985;

    b)    Samsung Galaxy Cellular Telephone, Model: SM-J327P, IMEI: 356964086129167;

    c)    ZTE Cellular Telephone, Model: Z836BL, IMEI: 862447031390610

The Devices are currently in the custody of the Drug Enforcement Administration McAlester Resident Office located at 100 Airport Road in McAlester, Oklahoma.

2.    This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Devices described in Attachment A that relate to violations of 21 U.S.C. 841 (a) (1) and 846, and 18 U.S.C. 1956 which involve **Manuel Emilio PAYANO and Angel VEGA** and others as yet identified, including:

        a.      lists of customers/associates and related identifying information;

        b.      types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

        c.      any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

        d.      any information recording **PAYANO, VEGA**'s, or other co-conspirators schedule or recent travel;

        e.      all bank records, checks, credit card bills, account information, and other financial records.

        f.      communications including text messages or recorded voice messages saved on the Devices, as well as call history, stored telephone numbers and other notes ;

        g.      photographs or videos which may identify co-conspirators or locations;

        h.      stored addresses or locations within mapping software that may identify locations recently visited.

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.